```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DR. EUBULUS J. KERR, III,                         :
                                                  :
                        Plaintiff,                :
                                                  :
            -v-                                   :   14-cv-9168 (KBF)
                                                  :
JOHN THOMAS FINANCIAL et al.,                     :
                                                  :
                        Respondents.              :
------------------------------------------------------------X
ANASTASIOS BELESIS and JOSEPH                     :
CASTELLANO,                                       :
                                                  :
                        Petitioners,              :
                                                  :
            -v-                                   :   14-cv-8306 (KBF)
                                                  :
EUBULUS J. KERR III,                              :   OPINION & ORDER
                                                  :
                        Respondent.               :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 16, 2015

KATHERINE B. FORREST, District Judge:

Now before the Court are dueling petitions to confirm and vacate an award issued in an arbitration before the Financial Industry Regulatory Authority ("FINRA") initiated by petitioner Dr. Eubulus J. Kerr III against respondents John Thomas Financial ("JTF"), Anastasios Belesis ("A. Belesis"), George Belesis ("G. Belesis"), and Joseph Castellano. In the arbitration, Kerr accused respondents of churning his securities brokerage account. Kerr won the arbitration, and the arbitration panel awarded him nearly $1 million in damages. For the reasons set forth below, Kerr's petition to confirm the arbitration award is GRANTED and respondents' petitions are DENIED.

Kerr has also moved for sanctions against A. Belesis and G. Belesis, arguing that their motions to vacate are frivolous and designed to delay payments owed to Dr. Kerr. As the circumstances in this case are not so extraordinary as to justify the imposition of sanctions, Kerr's motion for sanctions is DENIED.

I.     BACKGROUND[1]

In April 2011, Dr. Kerr opened a securities brokerage account with JTF,[2] a registered broker/dealer regulated by FINRA. (ECF No. 12 ("Kerr Pet.") ¶ 3; ECF No. 44 ("G. Belesis Pet.") ¶ 5; ECF No. 60 at 4.) At the time, A. Belesis was JTF's Chief Executive Officer; Castellano was JTF's Chief Compliance Officer; and G. Belesis, who is A. Belesis' younger brother was JTF's President. (G. Belesis Pet. ¶¶ 6-9.) JTF assigned brokers Brian Roth and Peter Viglione and branch managers Marc Greenberg and Michele Misiti to Dr. Kerr's account. (G. Belesis Pet. ¶¶ 16, 21 n.2, 41(e)-(f).)

On or about January 3, 2013, Dr. Kerr initiated an arbitration before FINRA pursuant to the compulsory securities industry arbitration rules.[3] (Kerr Pet. ¶ 9.) In essence, Kerr alleged that JTF's brokers churned his account by executing a high volume of purchases and sales in order to generate excessive commissions and fees.

---

[1] Unless otherwise stated, all citations to entries on ECF in this Opinion & Order refer to the docket in case no. 14-cv-9168. Any references to the docket in case no. 14-cv-8306 will be explicitly noted.

[2] JTF went out of business in July 2013. (G. Belesis Pet. ¶ 4.)

[3] The full caption for the arbitration, which was assigned FINRA Arbitration No. 13-00041, was: Dr. Eubulus J. Kerr, III vs. John Thomas Financial, Brian Robert Roth, Peter Daniel Viglione, Anastasios P. Belesis, George Belesis, Joseph Louis Castellano, Michele Ann Misiti, Marc Greenberg, Gary Robert Putwin, Michael Robert Egan, Thomas George Pinou. (Kerr Pet. ¶ 9.) Before the arbitration hearing, Dr. Kerr withdrew his claims against Michael Robert Egan, George Pinout, and Gary Robert Putwin. (Kerr Pet. ¶ 10.) During the hearing, on or about June 19, 2014, Dr. Kerr settled and withdrew his claims against Brian Roth, Peter Viglione, and Marc Greenberg. (Kerr Pet. ¶ 10.)

(See Kerr Pet. ex. A.)  The arbitration hearing took place from June 16-18, 2014 in New Orleans, Louisiana.  (Kerr Pet. ¶ 12.)  Respondents were called as witnesses at the hearing.  (ECF No. 61 at 10.)  Castellano and G. Belesis appeared at the hearing, were represented by counsel, and provided testimony on their own behalf.  (ECF No. 61 at 11.)  However, G. Belesis was not in attendance at the start of the evidentiary hearings.  (ECF No. 44 ¶ 39.)  A. Belesis chose not to appear, even though he was named as a party and at the time was a registered investment adviser and therefore required to appear.  (ECF No. 61 at 10-11.)  At the beginning of the hearing, when neither A. Belesis nor G. Belesis was in attendance, one of the arbitrators commented that their absence was "disrespectful, at the least."  (See ECF Nos. 43 at 4; 44 ¶¶ 33, 38, 40; 70 ¶ 13.)  When the arbitration panel later inquired into A. Belesis' absence, G. Belesis stated that it was because an aunt was visiting him, and A. Belesis did not want to travel.  (ECF No. 61 at 11.)

On August 5, 2014, FINRA issued a written award (the "Award") setting forth the Arbitration Panel's decision.  The Award states:

> Respondents JTF, A. Belesis and G. Belesis are liable, jointly and severally, for churning and failure to supervise and shall pay to [Dr. Kerr] compensatory damages in the amount of $600,000.00 plus interest accruing at the Louisiana statutory rate from April 1, 2012, until the date of payment of the Award.
>
> Respondent Castellano is liable for churning and failure to supervise and shall pay to [Dr. Kerr] compensatory damages in the amount of $5,000.00 plus interest accruing at the Louisiana statutory rate from April 1, 2012, until the date of payment of the award.

3

> Respondents JTF, A. Belesis and G. Belesis are liable, jointly and severally, and shall pay to Claimant punitive damages in the amount of $300,000.00 pursuant to Alabama Code 1975 § 6-11-20.
>
> Respondents JTF, A. Belesis and G. Belesis are liable, jointly and severally, and shall pay to [Dr. Kerr] costs in the amount of $14,732.96.
>
> Respondents JTF, A. Belesis and G. Belesis are liable, jointly and severally, and shall pay to [Dr. Kerr] the sum of $375.00 representing reimbursement of the nonrefundable portion of the claim filing fee previously paid by Claimant to FINRA Dispute Resolution.
>
> The awards against Respondents [above] shall be over and above any sums received by [Dr. Kerr] through settlements with other Respondents.
>
> Respondents JTF, Roth, Viglione, A. Belesis, G. Belesis, Castellano and Misiti's request for expungement is denied without prejudice because it was not pursued at the evidentiary hearing.
>
> [Dr. Kerr]'s claims against Respondent Misiti are denied, with prejudice.
>
> Any and all relief not specifically addressed herein, including [Dr. Kerr's] request for attorneys' fees, is denied.

(Kerr Pet. ¶ 13 & ex. A at 4-5.) To date, respondents have not remitted any payment to Dr. Kerr in accordance with the Award. (Kerr Pet. ¶ 15.)

G. Belesis filed a petition for voluntary bankruptcy on September 12, 2014. (Kerr Pet. ¶¶ 6, 14.) On October 16, 2014, A. Belesis and Castellano filed a petition to vacate the arbitration award. (14-cv-8306 ECF No. 1.) On October 20, 2014, Dr. Kerr commenced an action in the Supreme Court of the State of New York, New York County, seeking to confirm the arbitration award against A. Belesis,

Castellano, and JTF.  (ECF No. 1 ¶ 1.)  A. Belesis, Castellano, and JTF removed Dr. Kerr's state court action to federal court on November 18, 2014.  (ECF No. 1.)

At the time, A. Belesis, Castellano, and JTF were represented by Dan A. Druz, who evidently failed to prosecute their case.  On November 18, 2014 the Court gave A. Belesis and Castellano notice of its intention to dismiss their petition to vacate pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.  (14-cv-8306 ECF No. 5.)  Since Druz took no action following that order, the Court dismissed A. Belesis and Castellano's petition to vacate on December 1, 2014.  (14-cv-8306 ECF No. 6.)  They attempted to appeal.  (See 14-cv-8306 ECF No. 9.)

On January 8, 2015, Judge Martin Glenn lifted the automatic stay in G. Belesis's bankruptcy, and Dr. Kerr filed an amended petition to confirm, which named G. Belesis as an additional respondent.  (Kerr Pet. ¶¶ 6, 14.)  Dr. Kerr's amended petition seeks an order directing Castellano to pay Dr. Kerr $5,000 in compensatory damages, and directing A. Belesis, G. Belesis, and JTF to pay Dr. Kerr $600,000 in compensatory damages and $300,000 in punitive damages, plus interest, costs, and fees.  (Kerr Pet. at 5-6.)

On January 14, 2015, the Court held a joint telephonic conference to clarify the relationship between and current status of the two actions.  (ECF Nos. 14-15.)  At the conference, Druz agreed to withdraw the appeal and to withdraw as counsel for A. Belesis and Castellano.  (ECF No. 15.)  G. Belesis represented himself pro se

until February 12, 2015.[4]  (See ECF No. 33.)  A. Belesis and Castellano represented themselves pro se until March 9, 2015.  (See ECF Nos. 37-38.)

As a result of the discussion at that conference, on January 15, 2015, the Court consolidated the two actions.  (ECF No. 15.)  On March 10, 2015, A. Belesis and Castellano filed a motion to vacate the arbitration award (ECF No. 47), and G. Belesis did the same (ECF No. 44).  Dr. Kerr filed briefs in opposition to respondents' motions on April 7, 2015.  (ECF Nos. 60-61.)  The motions became fully briefed on April 21, 2015.  (ECF Nos. 63, 65, 68.)

On May 1, 2015, this Court stayed these actions as against Castellano due to his filing for bankruptcy in the United States District Court for the Eastern District of New York.  (ECF No. 24.)  On May 26, 2015, Dr. Kerr filed a motion for sanctions against A. Belesis and G. Belesis.[5]  (ECF No. 74.)  Those respondents filed briefs in opposition on June 9-10, 2015.  (ECF Nos. 80, 82-83.)  The motions became fully briefed on June 16, 2015.  (ECF Nos. 84-85.)

II. LEGAL STANDARDS

    A.    Judicial Review of Arbitration Award

        1.    Policy favoring arbitration.

Courts generally aim not to interfere with arbitration proceedings, as doing so tends to "frustrate the intent of the parties, and thwart the usefulness of arbitration, making it 'the commencement, not the end, of litigation.'"  Duferco Int'l

---

[4] G. Belesis' counsel, Robert Marc Bursky, has not yet filed a notice of appearance, though he has stated that he intends to do so.  (See ECF No. 33.)

[5] Although Dr. Kerr's notice of motion states that he is seeking sanctions against A. Belesis, G. Belesis, and Castellano, his opening brief states that he is not seeking sanctions against Castellano in light of his ongoing bankruptcy proceedings.  (See ECF No. 77 at 6.)

Steel Treading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003) (quoting Burchell v. Marsh, 58 U.S. (17 How.) 344, 349 (1854)).  Judicial review of arbitration awards is available only in limited circumstances, as "[u]ndue judicial intervention would inevitably judicialize the arbitration process, thus defeating the objective of providing an alternative to judicial dispute resolution." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 19 (2d Cir. 1997).

        2.    Confirmation of arbitration award.

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., the role of a district court in reviewing an arbitration award is 'narrowly limited' and 'arbitration panel determinations are generally accorded great deference under the [FAA].'" Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 103 (2d Cir. 2013) (quoting Tempo Shain, 120 F.3d at 19).  "This deference promotes the 'twin goals of arbitration, namely settling disputes efficiently and avoiding long and expensive litigation.'" Id. (quoting Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 405 (2d Cir. 2009)); see also T Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 342 (2d Cir. 2010) (a court's "power under § 10(a)(4) is strictly limited 'in order to facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation'" (quoting ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co., 564 F.3d 81, 85 (2d Cir. 2009))).  "Consequently, the burden of proof necessary to avoid confirmation of an arbitration award is very high, and a district court will enforce the award as long as 'there is a barely colorable justification for the outcome reached.'" Kolel, 729 F.3d at 103-04 (quoting Rich v. Spartis, 516 F.3d

7

75, 81 (2d Cir. 2008)). The confirmation of an arbitration award under FAA § 9 is thus generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." D.H. Blair & Co. v. Gottdienier, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks and citation omitted).

   3. <u>Vacatur of arbitration award.</u>

    a) FAA § 10(a).

"[A] party seeking to vacate an arbitration award bears the burden of proof, 'and the showing required to avoid confirmation is very high.'" A & G Coal Corp. v. Integrity Coal Sales, Inc., 565 F. App'x 41, 42 (2d Cir. 2014) (summary order) (quoting D.H. Blair, 462 F.3d at 110); see also Beljakovic v. Melohn Props., Inc., 542 F. App'x 72, 73 (2d Cir. 2013) (summary order) ("The showing required to avoid summary confirmation of an arbitration award is high." (quoting Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp., 103 F.3d 9, 12 (2d Cir. 1997))). Vacatur is warranted only in four circumstances set forth in FAA § 10(a):

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4).

As to § 10(a)(2), "evident partiality" exists only if "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." Scandinavian Reins. Co. v. St. Paul Fire & Marine Ins. Co., 668 F.3d 60, 64 (2d Cir. 2012) (quoting Applied Indus. Materials Corp. v. Ovalar Makine Tacaret Ve Sanayi, A.S., 492 F.3d 132, 137 (2d Cir. 2007)). Although a party seeking vacatur must prove evident partiality by showing something more than the mere appearance of bias, proof of actual bias is not required, and partiality can be inferred from objective facts inconsistent with impartiality. Kolel, 729 F.3d at 104. A showing of evident partiality must be "direct and not speculative," and evidence of corruption "must be abundantly clear in order to vacate an award under § 10(a)(2)." Id. As to § 10(a)(3), an arbitration panel's decision "to hear only one witness does not make the arbitration fundamentally unfair," because the panel is "not required to hear more—or any—testimony to reach its determination." Kolel, 729 F.3d at 107.

        b)        Manifest disregard of the law.

In addition to these four grounds for vacatur, the Second Circuit has provided a "'judicial gloss'" on § 10(a) to provide that "an arbitration award may be set aside if it was rendered in 'manifest disregard of the law.'" A & G Coal, 565 F. App'x at 42 (quoting Schwartz v. Merrill Lynch & Co., 665 F.3d 444, 451 (2d Cir. 2011)). "[A]n arbitration award should not be confirmed where it can be shown that the arbitration panel acted in 'manifest disregard of the law' to such an extent that '(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators . . . [was] well defined,

9

explicit, and clearly applicable.'" Hardy v. Walsh Manning Sec., L.L.C., 341 F.3d 126, 129 (2d Cir. 2003) (quoting DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 821 (2d Cir. 1997)).  A court's review of an arbitral decision for manifest disregard of the law is "severely limited, highly deferential, and confined to those exceedingly rare instances of egregious impropriety." Vaughn v. Leeds, Morelli & Brown, P.C., 315 F. App'x 327, 330 (2d Cir. 2009) (summary order) (quoting Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 91, 95 (2d Cir. 2008)).

        c)      Public policy.

A court may refuse to enforce an arbitration award on the grounds that it "violate[s] some explicit public policy that is well defined and dominant and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." DiRussa, 121 F.3d at 824-25 (quoting United Paperworkers Int'l v. Misco, Inc., 484 U.S. 29, 43 (1987)); see also Schwartz, 665 F.3d at 452 (the deferential standard of review applied to arbitration awards "is not applied '[i]f the contract as interpreted by [the arbitrator] violates some explicit public policy'; in that circumstance the courts 'are obligated to refrain from enforcing it'" (alterations in original) (quoting W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am., 461 U.S. 757, 766 (1983))).

    B.    Sanctions

"For sanctions issued pursuant to a motion by opposing counsel, courts have long held that an attorney could be sanctioned for conduct that was objectively unreasonable." Muhammad v. Walmart Stores E., L.P., 732 F.3d 104, 108 (2d Cir.

10

2013). A district court may impose Rule 11 sanctions against a litigant who submits papers "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Ginther v. Provident Life & Cas. Ins. Co., 350 F. App'x 494, 496 (2d Cir. 2009) (summary order) (quoting Fed. R. Civ. P. 11(b)(1)). A district court may also impose Rule 11 sanctions "when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." Ipcon Collections LLC v. Costco Wholesale Corp., 698 F.3d 58, 63 (2d Cir. 2012) (citing Fed. R. Civ. P. 11(b)-(c); Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 391 (2d Cir. 2003)).

III.   DISCUSSION

    A.   <u>Arbitration Award</u>

Respondents' motions to vacate and their opposition to Dr. Kerr's motion to confirm represent precisely the kind of second bite at the apple that the exacting and narrow standard of review for arbitration awards is designed to prevent. An arbitration award must be confirmed if there exists a colorable ground for doing so. Here, the evidence and record of the arbitration hearing amply support the confirmation of the arbitration award.

    1.   <u>FAA § 10(a).</u>

None of the circumstances justifying vacatur under FAA § 10(a) are present here. As to § 10(a)(1), there is no evidence here that the arbitration panel was corrupt or engaged in fraud. Indeed, respondents do not argue that appear to argue that § 10(a)(1) justifies vacatur here.

Respondents' various arguments that vacatur is warranted under § 10(a)(2) due to evident partiality or corruption in the arbitrators are meritless. Respondents

have not offered any "direct and not speculative" evidence of partiality or corruption, let alone evidence that it is "abundantly clear" that vacatur under § 10(a)(2) is warranted.  Kolel, 729 F.3d at 104.  Indeed, respondents' proffered evidence of the arbitration panel's bias is better understood as the arbitration panel's logical reaction to the weakness of respondents' case.  For instance, respondents argue that vacatur under § 10(a)(2) is warranted because the arbitration panel allowed, over respondents' objections, hearsay in Dr. Kerr's amended statement of claim.  However, contrary to respondents' assertions, they did not object on the record at the hearing to any section of the amended statement of claim on hearsay grounds.

     A stray comment at the start of the evidentiary hearing that the absence of the Belesis brothers was "disrespectful, at the least" does not change this determination.  This comment does not reasonably suggest or imply that the arbitration panel had prejudged any of the merits of the case against the Belesis brothers, nor are there any other objective facts confirming the contentions of bias such that the evidence of corruption is "abundantly clear."  Kolel, 729 F.3d at 104.

     Respondents also argue that vacatur is warranted in light of the arbitration panel's decision to proceed with the hearing without receiving testimony from Roth and Viglione.  However, respondents had the opportunity to call Roth and Viglione at the arbitration hearing, and explicitly chose not to (see Declaration of Brian J. Neville, ECF Nos. 64 & 66 ("Neville Decl.") ex. B), and they similarly never requested that the arbitration panel execute an order of appearance for them—

effectively waiving this argument.  In any event, the arbitration panel considered a range of other evidence, which provided a more than colorable basis for the award of damages against respondents.  This evidence included examinations by respondents' counsel of G. Belesis, Castellano, Greenberg, and a suitability expert, and respondents' counsel rested without offering any further evidence or testimony (see Neville Decl. ex. C), which undermines respondents' argument that the arbitrators were out to get them and would simply not allow them to make their case.  In sum, vacatur under § 10(a)(2) is not warranted here.

As to § 10(a)(3), respondents have not demonstrated that the arbitrators refused to postpone the hearing or engaged in any other misbehavior that made the arbitration fundamentally unfair.  And finally, there is no basis here for vacatur under § 10(a)(4), as the arbitration panel clearly executed a mutual, final, and definite award, and respondents' arguments that the arbitration panel exceeded its powers lack merit.

        2.      Manifest disregard of the law.

Respondents' arguments that the arbitration award should be set aside because the arbitration panel manifestly disregarded the law similarly lack merit.  Respondents argue that the arbitration panel misapplied the law regarding the scienter requirement for a 10b-5 churning violation, control person liability, respondeat superior, failure to supervise, and punitive damages.  Respondents also strenuously argue that they could not have been found liable for churning as a matter of law because they themselves did not trade Dr. Kerr's account, and G.

Belesis argues that he cannot be liable for churning under a failure to supervise theory because he had no supervisory responsibilities.

However, respondents have not alleged or established that the arbitrator knew of the relevant legal standards, appreciated that they controlled the outcome of disputed issues, and nonetheless willfully flouted those standards and refused to apply them correctly. Simply put, manifest disregard is not the same as erroneous application—and respondents have only alleged the latter. In sum, vacatur of the arbitration award due to manifest disregard of the law is not appropriate in this case.

### 3. Public policy.

Respondents argue that the Court should set aside the arbitration panel's award because it violates public policy. To the extent respondents' public policy argument is based on the arbitration panel's alleged bias and alleged failure to obtain certain evidence from certain witnesses, this argument lacks merit both for the reasons stated above and because in making these arguments respondents point to no "well defined and dominant" public policy justifying vacatur. DiRussa, 121 F.3d at 824-25. Indeed, here respondents' arguments are based only on "general considerations of supposed public interests," Schwartz, 665 F.3d at 452, which the Second Circuit has said do not justify vacating an arbitration award.

Respondents also argue that the Court should set aside the arbitration panel's award of punitive damages because it violates public policy. However, this argument misses the mark because the arbitration panel's award of punitive damages was proper under the relevant law. Respondents were on notice of the

punitive damages issue as such damages were requested by Dr. Kerr in his pleading.  The customer agreement between Dr. Kerr and JTF did not prohibit an award of punitive damages, and it also specifies that Alabama law governs the agreement.  (See ECF No. 49 ex. C at 7 ¶ 18.)  Alabama Code § 6-11-20 states that punitive damages may be awarded "in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff."  Ala. Code. § 6-11-20.  Dr. Kerr's amended statement of claim asserted counts for common law fraud, negligence, gross negligence, and negligent supervision (ECF No. 40 ex. B ¶¶ 40-48), all of which are torts under Alabama law.  E.g., Pub. Bldg. Auth. of City of Huntsville v. St. Paul Fire & Marine Ins. Co., 80 So.3d 171, 175 (Ala. 2010) (negligence is a tort claim); Trammer v. Bernstein, 596 So.2d 572, 576 (Ala. 1991) ("A fraud action is a tort action."); Lane v. Cent. Bank of Ala., N.A., 425 So.2d 1098, 1100 (Ala. 1983) (negligent supervision is a tort).  And in awarding Dr. Kerr punitive damages, the arbitration panel explicitly cited § 6-11-20.  (Kerr Pet. ¶ 13.)  The arbitration panel therefore properly awarded Dr. Kerr punitive damages, and public policy thus does not counsel toward vacating the arbitration award.

  B.  <u>Sanctions</u>

  Dr. Kerr argues that this Court should grant sanctions against A. Belesis and G. Belesis because their moving papers contain false statements of facts and frivolous arguments, and are designed to delay payment of their obligations to Dr. Kerr.  Dr. Kerr requests that the Court award him attorneys' fees and expenses

incurred in opposing the Belesis brothers' petitions to vacate the arbitration award and in prosecuting the motion for sanctions.

Although nobody would accuse the Belesis brothers of having brought strong motions to vacate, the circumstances here are not so sufficiently extraordinary as to justify an award of sanctions against them, especially considering that both A. Belesis and G. Belesis represented themselves <u>pro se</u> for a time, and A. Belesis changed counsel after the attorney he had initially hired to litigate this matter failed to prosecute the case.  Further, respondents' motions to vacate did not require much duplication of effort on the part of counsel for Dr. Kerr, as respondents' arguments in favor of their motions to vacate were essentially the same as their arguments opposing Dr. Kerr's motion to confirm, and much of the briefing consisted of copy-and-paste jobs.  The Court therefore declines to award sanctions against A. Belesis and G. Belesis at this time, though the Court will not preclude petitioner from renewing their motion should respondents act so as to frustrate or delay the payment of their obligations to Dr. Kerr.  Petitioner's motion for sanctions is DENIED.

IV.   CONCLUSION

For the foregoing reasons, Kerr's petition to confirm the arbitration award is GRANTED, respondents' petitions to vacate the arbitration award are DENIED, and Kerr's motion for sanctions against A. Belesis and G. Belesis is DENIED.  This action is stayed against Castellano, and accordingly this Opinion & Order is not effective as against him until the stay is lifted.

The Clerk of Court is directed to close the motions at 14-cv-9168 ECF Nos. 44, 47, 74, 82.

SO ORDERED.

Dated:    New York, New York
          July 16, 2015

 

_____
KATHERINE B. FORREST
United States District Judge